812 F.2d 1408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles J. TINSLEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3070.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1987.
 
 Before MERRITT, JONES and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals from the grant of the Secretary's motion for summary judgment with respect to plaintiff's claim for disability and supplemental security income benefits. We affirm the grant of summary judgment.
 
 
 2
 The plaintiff was born on March 6, 1938. He is a high school graduate with additional training in hotel-motel management. His past relevant work experience has been as a maintenance supervisor, executive housekeeper, chief porter, shipping clerk, and supervisor and assistant director of housekeeping.
 
 
 3
 The plaintiff has alleged disability due to problems with his "knees and legs." He underwent amputation of the left leg at the knee in 1972 following an automobile accident. He was fitted with a prosthesis and did well until November of 1982. The claimant apparently did not see a physician between the alleged onset date and the date he filed his applications for benefits. He was seen by A.W. Tramer, M.D., at the request of the Bureau of Disability Determinations on January 11, 1983. He complained of pain in the right knee, pain in the left thigh and stump, and morning swelling in the stump. He used a cane at times for ambulation and walked well when using the cane in his right hand. Dr. Tramer noted that the prosthesis was worn-out, that the plaintiff's right knee was probably symptomatic due to decreased functional performance of the left leg, and that the demands of the plaintiff's past work were not within his residual capabilities.
 
 
 4
 The plaintiff receives medical care through the Veterans Administration. He was apparently first seen on February 18, 1983. He complained of pain and occasional edema in the left stump and pain and giving out of the right knee. While there was tenderness on physical examination, there was no swelling noted. It was felt that his prosthesis needed adjustment. When seen by the outpatient medical service on February 28, 1983, no heat, swelling or marked tenderness were noted in the right knee. Tenderness, but not swelling, was reported in the left knee. The impression was that he needed a new prosthesis. No tenderness or instability were found on orthopedic evaluation in March 18, 1983.
 
 
 5
 The plaintiff was instructed to perform quadriceps exercises. This improved the strength in the right knee so that when seen on September 19, 1983, he reported that the knee no longer gave way on him. He had been using crutches and with these his left leg stump no longer swelled, although he did continue to have pain after standing or walking for several hours. The impression was "good stump-cause for pain not evident."
 
 
 6
 The plaintiff also has a history of alcohol abuse and suffered seizures in November of 1980 and 1981 secondary to alcohol abuse and withdrawal. He had stopped taking his Dilantin, of his own accord, a month prior to his second seizure. He has since taken his Dilantin and there have been no seizures reported since November 1981. Although his alcohol abuse did cause two seizures, he testified that he had never had a problem with alcohol. He now drinks only moderately.
 
 
 7
 When the plaintiff filed his application for benefits he reported that it was difficult for him to walk more than three hours because his left leg swells and starts aching. He sometimes could help with cooking and laundry, could still drive, and did most of the family shopping. By the time of the Reconsideration Disability Report--March 23, 1983--he reported that he no longer ambulated with a cane but required crutches. He was no longer able to do the marketing or laundry. He indicated he was no longer able to drive due to pain in the right knee caused by movement from the brake to the gas pedal.
 
 
 8
 At the September 28, 1983 administrative hearing he testified that he could stand without crutches 30-45 minutes on his one leg at any one time. He could walk only about 10 feet unassisted, but presumably substantially more with ambulatory aids. He apparently had some pain at times while sitting, but "not an excruciating pain, it's like a little tingle." He could lift "30, 40 or 50 pounds" and, with his crutches, carry "just small items like a notebook or something of that sort."
 
 
 9
 Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income were denied initially and upon reconsideration. The ALJ considered the case de novo and also denied benefits. This decision became the final decision of the Secretary. The United States magistrate to whom the district court referred the case affirmed the Secretary's decision.
 
 
 10
 The ALJ applied the five-step test for a determination of disability, see 20 C.F.R. 416.920(a)-(f) (1986), and found that plaintiff (1) was not engaged in substantial gainful activity, and (2) was severely impaired, but (3) did not have a per se disabling impairment. The ALJ went on to the fourth step and found that plaintiff could not perform his past relevant work, which work was considered to be semi-skilled medium to heavy work. At this point, the burden shifted to the Secretary to show under the fifth step that plaintiff could perform other work available in the national economy.
 
 
 11
 The plaintiff's testimony alone provided a substantial evidentiary basis for concluding that he could still perform sedentary work. Plaintiff testified that while sitting he was not in excruciating pain, but rather felt a "little tingle." He testified that even without his crutches he could stand for half an hour to forty-five minutes. He testified that while on the crutches he could carry small items like a notebook. He also testified that he could lift but not carry objects weighing thirty to fifty pounds. The medical evidence does not contradict any of this testimony.
 
 
 12
 20 C.F.R. 404.1567(a) (1986) provides, in part, that sedentary work involves:
 
 
 13
 lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 14
 Plaintiff's testimony established that he was capable of performing jobs meeting this definition. Indeed, when asked whether he had considered jobs such as assembly-type work, plaintiff testified: "I would do that type of work ... if necessary...." Tr. 49. However, he indicated that he found such jobs undesirable because there would be little personal contact with people. That does not form a basis on which benefits may be awarded.
 
 
 15
 Accordingly, we AFFIRM the magistrate's judgment.